UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:20-CV-00173-HBB

CHRISTOPHER L HOUCHENS                                          PLAINTIFF

VS.

KILOLO KIJAKAZI, ACTING COMMISSIONER
SOCIAL SECURITY ADMINISTRATION[1]                              DEFENDANT

MEMORANDUM OPINION
AND ORDER

BACKGROUND

Before the Court is the complaint (DN 1) of Christopher L Houchens ("Plaintiff") seeking

judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   Both

the Plaintiff (DN 15) and Defendant (DN 22) have filed a Fact and Law Summary.   For the reasons

that follow, the final decision of the Commissioner is **AFFIRMED**, and judgment is **GRANTED**

for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the

undersigned United States Magistrate Judge conducting all further proceedings in this case,

including issuance of a memorandum opinion and entry of judgment, with direct review by the

Sixth Circuit Court of Appeals in the event an appeal is filed (DN 13).   By Order entered

April 6, 2021 (DN 12), the parties were notified that oral arguments would not be held unless a

written request therefor was filed and granted.   No such request was filed.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.   Pursuant to Rule 25(d) of
the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted as the defendant in this suit.

FINDINGS OF FACT

On November 28, 2017, Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income (Tr. 16, 283-90, 291-92).   Plaintiff alleged that he became disabled on January 1, 2017, as a result of degenerative disc disease, back pain, high blood pressure, low heart rate, heart attack, pancreatitis, anxiety, depression, diabetes, and thyroid disorder (Tr. 16, 144-45, 157-58, 172, 177, 192, 208, 215, 340).   Administrative Law Judge Robert Martin ("ALJ") conducted a video hearing from Nashville, Tennessee (Tr. 16, 123). Plaintiff and his counsel, Mary G. Burchett-Bower, participated from Bowling Green, Kentucky (Id.).   Pedro M. Roman, an impartial vocational expert, testified during the hearing (Id.).

In a decision dated October 2, 2019, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 16-26).   The ALJ ascertained that Plaintiff's insured status expired on June 30, 2019 (Tr. 19).   At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 1, 2017, the alleged onset date (Id.).   At the second step, the ALJ determined that Plaintiff has the following severe impairments: cervical and lumbar degenerative disc disease; obesity; diabetes mellitus; hypertension; coronary artery disease; chronic obstructive pulmonary disease; and dysfunction of left knee with surgical repair (Id.).   The ALJ also determined that Plaintiff's depression is a "non-severe" impairment within the meaning of the regulations (Id.).   At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Id.).

At the fourth step, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a range of light work because he is limited to: occasional climbing of ramps and stairs;

never climbing ladders, ropes or scaffolds; occasional stooping, crouching, kneeling, crawling, and balancing; avoiding concentrated exposure to work around hazardous machinery, moving parts, vibrations, and work at unprotected heights; and avoiding concentrated exposure to extreme heat, humidity, dust, odors, fumes, pulmonary irritants, and areas of poor ventilation (Tr. 20).   The ALJ found that Plaintiff has no past relevant work (Tr. 24).

The ALJ proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 24-26).   The ALJ found that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy (Id.).   Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from January 1, 2017, through the date of the decision, October 2, 2019 (Tr. 26).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 280-82).   The Appeals Council denied Plaintiff's request for review (Tr. 1-4).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.   Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986).   "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."   Cotton, 2 F.3d at 695 (quoting

<u>Casey v. Sec'y of Health & Human Servs.</u>, 987 F.2d 1230, 1233 (6th Cir. 1993)).   In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."   <u>Cohen v. Sec'y of Health & Human Servs.</u>, 964 F.2d 524, 528 (6th Cir. 1992) (quoting <u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4).   At that point, the ALJ's decision became the final decision of the Commissioner.   20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision).   Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision.   42 U.S.C. § 405(g); 20 C.F.R. § 404.981; <u>Cline v. Comm'r of Soc. Sec.</u>, 96 F.3d 146, 148 (6th Cir. 1996); <u>Cotton v. Sullivan</u>, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities.   42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income).   The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); <u>Barnhart v. Walton</u>, 535 U.S. 212, 214 (2002); <u>Abbott v. Sullivan</u>, 905 F.2d 918, 923 (6th Cir. 1990).

4

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920.   In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the RFC to return to his or her past relevant work?

5) Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

<u>Finding No. 1</u>

Plaintiff contends that substantial evidence does not support the ALJ's determination that the date last insured is June 30, 2019 (DN 15 PageID # 1337-38).   Plaintiff explains, "**The ER-PIA determination run December 21, 2018 using January 1, 2017 onset date shows date last insured to be September 2019**" (<u>Id.</u>) (bold in original text) (citing Tr. 298).

Defendant contends the issue is waived because Plaintiff has not presented an argument in support of his position (DN 22 PageID # 1365).   Alternatively, Defendant asserts even if the ALJ used an incorrect date, the error is harmless because the ALJ's denial of disability benefits does not turn on the date last insured and Plaintiff has not shown prejudice from use of the wrong date

5

(Id. at PageID # 1365-66) (citing Thomas v. Comm'r of Soc. Sec., No. 18-108, 2019 WL 642679,

*16 (S.D. Ohio Feb. 15, 2019); Ferguson v. Comm'r of Soc. Sec., No. 15-2714, 2017 WL 9473077,

*11 (N.D. Ohio Jan. 25, 2017)).

Considering the circumstances, Plaintiff has provided a sufficient argument in support of

his position.   The ALJ found June 30, 2019 is the date last insured (Tr. 19).   The evidence cited

by Plaintiff shows that September 19, 2019 is the correct date last insured (Tr. 298).   However,

the ALJ's error appears to be harmless because Plaintiff has not demonstrated prejudice from the

ALJ's use of the incorrect date.   See Ferguson, 2017 WL 9473077, at *11 ("Courts have held that

the use of an incorrect date last insured may be harmless when the ALJ's denial of disability

benefits does not turn on a plaintiff's date last insured, or the plaintiff cannot show prejudice from

the use of the incorrect date.") (citations omitted), adopted by 2017 WL 561834 (N.D. Ohio Feb.

13, 2017).

<u>Left Carpal Tunnel Syndrome and Left Cubital Tunnel Syndrome</u>

Citing the results of EMG testing on September 24, 2018, Plaintiff argues the ALJ should

have found Plaintiff's moderate left carpal tunnel syndrome and mild left cubital tunnel syndrome

constitute severe impairments in Finding No. 3 (DN 15 PageID # 1338-89) (citing Tr. 862).

Plaintiff contends this was reversible error, despite the ALJ having found there are other severe

impairments and continuing with the remaining steps in the sequential evaluation process (Id.).

Plaintiff explains, while the ALJ's discussion of evidence at step four included the EMG findings

and acknowledgment of decreased left arm sensation and mildly reduced grip and muscle strength

in the left upper extremity, the RFC determination does not include any limitation in use of

Plaintiff's left arm or hand (Id.) (citing Tr. 22, 856, 865, 868-869, 903, 1060, 1061, 1064, 1147,

1150, 1151, 1154, 1157, 1160, 1161, 1164, 1166, 1169, 1176, and 1179).   Plaintiff contends the ALJ's error is not harmless as light work generally requires "gross use of the hands to grasp, hold, and turn objects" and any limitation of these functional abilities must be considered to determine its impact on the occupational base at the light exertional level (Id. at PageID # 1339) (quoting Social Security Ruling 83-14 ("SSR")).

Defendant claims no reversible error occurred because the ALJ found other severe impairments at step two, continued with the sequential evaluation process, and considered the EMG and nerve conduction study in formulating Plaintiff's RFC (DN 22 PageID # 1366-67). Defendant points out the ALJ found the EMG and nerve conduction study of Plaintiff's "upper extremities showed evidence of moderate left carpal tunnel syndrome and mild left cubital tunnel syndrome but no evidence of nerve root pathology" (Id. at PageID # 1367) (quoting Tr. 22). Defendant contends that other than the diagnostic testing results, Plaintiff has not provided any evidence from a medical source showing these conditions caused any functional limitations outside of the ALJ's RFC determination (Id. at PageID # 1367-69).

At the second step in the sequential evaluation process a claimant must demonstrate he suffers from a "severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement . . . ."   20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); SSR 16-3p, 2017 WL 5180304, at *11 (Oct. 25, 2017); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam). To satisfy the "severe" requirement the claimant must demonstrate the impairment or combination of impairments "significantly limit" his physical or mental ability to do "basic work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a).

According to the regulations, upon determining that a claimant has at least one severe impairment, the administrative law judge must continue with the remaining steps in the disability evaluation outlined above.   Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987).   At step two, the ALJ did not make any findings regarding Plaintiff's left carpal tunnel syndrome and left cubital tunnel syndrome (Tr. 19-20).   However, the ALJ did find that Plaintiff had several severe impairments and continued with the remaining steps in the disability evaluation (Tr. 20-26).   In conjunction with the RFC determination at step four, the ALJ discussed the evidence cited by Plaintiff and other evidence in the record relevant to these two conditions and the functional limitations they impose (Tr. 21-24).   Because the ALJ considered the limitations imposed by the medically determinable severe and non-severe impairments in determining Plaintiff's RFC and whether Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy (Tr. 21-26), the ALJ's failure to find that Plaintiff's left carpal tunnel syndrome and left cubital tunnel syndrome are "severe" within the meaning of the regulations could not constitute reversible error.   Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987).

In reaching the above conclusion, the Court recognizes the ALJ made several important findings at steps four and five.   In conjunction with the RFC determination, the ALJ accurately summarized Plaintiff's testimony—related to limitations caused by the left carpal tunnel syndrome and left cubital tunnel syndrome—as experiencing weakness in his hands and he "cannot grip with his left hand like he used to" (Tr. 21, 134-35).   The ALJ observed that on September 26, 2018, an EMG and nerve conduction study of Plaintiff's upper extremities revealed "evidence of moderate left carpal tunnel syndrome and mild left cubital tunnel syndrome but no evidence of nerve root

8

pathology" (Tr. 22, 862).    Further, substantial evidence supports the ALJ's finding that examinations performed during the period in question revealed decreased left arm sensation as well as mildly reduced grip and muscle strength in Plaintiff's left upper extremity (Tr. 22, 863-64, 1060-61, 1064).    No treating or examining source rendered an opinion concerning physical functional limitations caused by Plaintiff's left carpal tunnel syndrome and left cubital tunnel syndrome.

The state agency medical consultants, Drs. Spetzler and Back, reviewed the record at the initial and reconsideration levels and expressed opinions regarding all of Plaintiff's physical limitations (Tr. 153-54, 166-67, 187-88, 202-03).    They both concluded that Plaintiff was limited to light work with certain postural limitations, and Dr. Back added some environmental limitations (Id.).

The ALJ found the limitation to light work persuasive as the doctors' opinions were consistent with the evidence as a whole (Tr. 24).    However, as explained in detail in the section that follows, the ALJ recognized that subsequently received evidence concerning limitations imposed by Plaintiff's decreased lumbar range of motion, history of left knee surgery, COPD, and hypertension supported the inclusion of more restrictive postural limitations and addition environmental limitations (Id.).    By contrast, the ALJ implicitly recognized that subsequently received evidence concerning the functional limitations imposed Plaintiff's left carpal tunnel syndrome and left cubital tunnel syndrome—mildly reduced grip and muscle strength in Plaintiff's left upper extremity—was adequately addressed by the limitation to light work (Id.).    The ALJ's finding is substantiated by the definition of light work which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."

9

20 C.F.R. §§ 404.1567(b), 416.967(b).   Considering the substantially heavier lifting and carrying requirements of Plaintiff's past work as a logger and automobile mechanic, light work is a significant reduction in the lifting and carrying requirements that adequately addresses the mildly reduced grip and muscle strength in Plaintiff's left upper extremity.[2]   Moreover, despite having the opportunity to do so, Plaintiff did not develop any vocational testimony during the hearing substantiating his position that functional limitations imposed by the left carpal tunnel syndrome and left cubital tunnel syndrome would have an impact on the number of jobs the vocational expert identified at the light exertional level (Tr. 139-42).   *See* SSR 83-14, 1983 WL 31254, at *4 (S.S.A. 1983).[3]   Considering the evidence in the record, the ALJ's functional and vocational findings at steps four and five—concerning Plaintiff's left carpal tunnel syndrome and left cubital tunnel syndrome—are supported by substantial evidence in the record.

In sum, Plaintiff is not entitled to relief on his challenge to the ALJ's findings concerning the left carpal tunnel syndrome and left cubital tunnel syndrome.

<u>Other Physical Impairments</u>

Plaintiff argues substantial evidence does not support the ALJ's RFC findings addressing his other physical impairments (DN 15 PageID # 1340-44).   Plaintiff explains that the state agency medical consultants, Drs. Spetzler and Back, reviewed the record at the initial and reconsideration

---

2 The vocational expert's testimony indicated Plaintiff's past work as a logger is classified as heavy work and as an automobile mechanic is classified as medium work (Tr. 138).   The regulations indicate, "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds."   20 C.F.R. §§ 404.1567(d), 416.967(d).   "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."   20 C.F.R. §§ 404.1567(c), 416.967(c).

3 In conjunction with the vocational findings at step five, the vocational expert's testimony indicates the hypothetical person could perform the following light work jobs: cashier II (DOT No. 211.462-010) with an SVP of 2 and 1,260,898 jobs nationwide; inspector and hand packager (DOT No. 559.687-074) with an SVP of 2 and 117,561 jobs nationwide; and pricing tagger/marker (DOT No. 209.587-034) with an SVP of 2 and 2,311,457 jobs nationwide (Tr. 139).

stages and opined that Plaintiff had the ability to perform light work with certain postural and environmental restrictions (Id.).   Plaintiff contends the ALJ relied on those opinions to find Plaintiff has the exertional capacity to perform light work without acknowledging that Drs. Spetzler and Back did not review subsequently submitted medical evidence and explaining why that evidence did not necessitate the imposition of more restrictive exertional limitations (Id.). Additionally, Plaintiff faults the ALJ's findings concerning certain postural and environmental limitations in the RFC because they deviate from the opinions of Drs. Spetzler and Back without any explanation (Id.).   More importantly, Plaintiff contends the ALJ, as a lay person, was not qualified to review of the subsequently received medical evidence and make such exertional, postural, and environmental findings without the benefit of a updated medical opinion addressing the evidence in the record (Id. at PageID # 1343-44) (citing Childress v. Comm'r, No. 16-CV-00119-HBB, 2017 WL 758941, at *4 (W.D. Ky. Feb. 27, 2017)).

Defendant contends that the ALJ's physical RFC is supported by substantial evidence because it is based on the evidence of record which includes the objective evidence and the opinions of Drs. Spetzler and Back (DN 22 PageID # 1369-72).   While Drs. Spetzler and Back did not have access to the entire record, the ALJ considered the more recent evidence and any relevant changes in Plaintiff's condition when the ALJ assessed the exertional, postural, and environmental limitations set forth in the physical RFC (Id. at PageID # 1371-72).   Defendant argues the ALJ did not commit reversible error in how he weighed the state agency opinions and other evidence, and the ALJ was justified in determining Plaintiff was capable of performing a significant number of jobs in the national economy (Id. at PageID # 1372).

11

The RFC determination is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations.   20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a), 416.946(c).   The Administrative Law Judge makes this finding based on a consideration of medical source statements and all other evidence in the case record.   20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c), 416.929, 416.945(a)(3), 416.946(c).   Thus, in making the RFC determination the Administrative Law Judge must necessarily evaluate the persuasiveness of the medical source statements in the record and assess the claimant's subjective allegations.   20 C.F.R. §§ 404.1520c, 404.1529(a), 416.920c, 416.929(a).

On March 5, 2018, Dr. Spetzler reviewed the record at the initial level and opined that Plaintiff could perform light work with the following postural limitations: occasionally climb ramps/stairs and climb ladders/ropes/scaffolds; frequently balance; occasionally stoop, kneel, crouch, and crawl (Tr. 153-54, 165-67).   On July 5, 2018, Dr. Back reviewed the record at the reconsideration level and agreed that Plaintiff could perform light work with the above-mentioned postural limitations but added the following environmental limitations: avoid concentrated exposure to vibration and hazards (machinery, heights, etc.) (Tr. 186-88, 201-03).

On September 27, 2018, Plaintiff underwent a cervical MRI (Tr. 861).   The treating orthopedic physician, Robert Riley, D.O., summarized the results as follows:

> MRI of the cervical spine showing C5-C6 small right central to posterior lateral protrusion accompanied by right posterior lateral marginal spurs[.]   Mass-effect on the right C6 nerve root.   No cord deformity.   Borderline canal stenosis contribution from ligamentum flavum buckling C6-C7 small to moderate left posterior lateral and proximal foraminal protrusion does not deform the cord but displaces the C7 nerve root.

(Tr. 860).   The doctor's assessment was cervical radiculopathy C6-C7, C5-C6, and cervical spasms (Tr. 857).   After discussing treatment options with Plaintiff, Dr. Riley scheduled epidurals of C5-C6 on the right and C6-C7 on the left (Id.).   Dr. Riley stated, "He can continue taking his ibuprofen as an anti-inflammatory and Flexeril for muscle spasms" (Id.).   Dr. Riley indicated Plaintiff "will follow-up with me in 2 months" (Id.).   The treatment records reflect that Plaintiff experienced on and off neck pain in 2018 and 2019, and examinations during the time frame revealed cervical tenderness to palpation and complaints of pain with rotation of the neck to the right (Tr. 856, 865, 868, 903, 1060, 1064, 1147, 1150, 1151, 1154, 1157, 1160, 1161, 1164, 1169, 1176, 1179).

On August 31, 2018, at the request of Dr. Riley, Dr. Singer performed an examination of Plaintiff related to chronic low back pain (Tr. 742, 1173).   Dr. Singer noted that a recent MRI scan revealed "very mild degenerative changes no evidence of any significant pathology" (Id.).   Dr. Singer indicated the physical findings "are more than equivocal with regards to SI joint pain[.] I think [it] is worth injecting the sacroiliac joint [to] see if we get any relief of his pain different from his minimal relief from epidurals etc." (Id.).   On December 10, 2018, Dr. Riley prescribed "crutches secondary" to Plaintiff's complaints of hip pain (Tr. 1157).

Additionally, the record shows that in April and May of 2019 Plaintiff sought treatment with Dr. Riley for his left knee giving out on him from time to time and pain (Tr. 1026-28, 1131, 1137, 1139, 1140, 1144).   As a result of an MRI performed on May 8, 2019, Dr. Riley recommended and agreed to undergo a left knee scope with partial medial meniscectomy and chondroplasty (Tr. 1133-1137, 1139).   Following the left knee scope with partial medial meniscectomy and chondroplasty of patella and trochlea on May 24, 2019, Dr. Riley conducted a

follow-up office visit on June 7, 2019 (Tr. 1131).   Dr. Riley indicated Plaintiff was doing well and, although offered a prescription for physical therapy Plaintiff declined (Id.).

The ALJ, in greater detail, discussed all the above-mentioned evidence in the context of assessing Plaintiff's physical RFC (Tr. 21-24).   As mentioned above, Drs. Spetzler and Back, concluded that Plaintiff was limited to light work with certain postural limitations, and Dr. Back added some environmental limitations (Tr. 153-54, 166-67, 187-88, 202-03).   The ALJ found these prior medical opinions persuasive as they were well supported and because they were consistent with subsequently received evidence such as mild lumbar imaging, unremarkable EMGs and nerve conduction studies of Plaintiff's lower extremities, mild to moderate cervical imaging, an upper extremity EMG, and upper extremity nerve conduction study (Tr. 24).[4]   The ALJ also noted that Plaintiff had some abnormal gait and sensory findings but also findings of normal gait, intact sensation, and normal strength (Id.).   The ALJ then commented:

> Accordingly, the undersigned finds that a limitation to light exertion is consistent with the evidence as a whole.   However, the undersigned finds that the claimant can never climb ladders, ropes, or scaffolds and that he should avoid concentrated exposure to extreme heat and pulmonary irritants.   This is consistent with the findings of decreased lumbar range of motion, the claimant's history of left knee surgery, and his COPD and hypertension.

(Id.).   Except for the postural limitation of "occasional balancing," the ALJ provided an adequate explanation for his postural and environmental limitation findings that varied from those expressed by Drs. Spetzler and Back.   Perhaps the ALJ added the postural limitation—occasional balancing—because of Plaintiff's history of left knee surgery.   Regardless, Plaintiff has not demonstrated prejudicial error arising from the ALJ's failure to explain this finding.

---

4 Contrary to Plaintiff's assertion, the ALJ's discussion of the evidence indicates he understood the evidence referred to was developed and submitted after Drs. Spetzler and Back reviewed the record (Tr. 22-24).

The circumstances here are distinguishable from those in Childress v. Comm'r, No. 16-CV-00119-HBB, 2017 WL 758941 (W.D. Ky. Feb. 27, 2017). In Childress, a state agency physician, Dr. Reid, reviewed the record and expressed an opinion regarding the claimant's physical limitations. Id. Thereafter, MRIs of Childress' cervical spine, lumbar spine, and shoulder were received in the record. Id. The administrative law judge in Childress relied on the raw medical data from those MRIs and x-rays to discount Dr. Reid's medical opinion and make the RFC determination. Id. Essentially, the administrative law judge in Childress "played doctor" because he considered the raw medical evidence in a vacuum. Id. Here, the MRIs and other raw medical data were also received after Drs. Spetzler and Back rendered their opinions. But in contrast to the circumstances in Childress, the ALJ had the benefit of considering the treating physicians' records which articulated their medical opinions regarding the raw medical data, the severity of Plaintiff's conditions, the best course of treatment for those conditions, and Plaintiff's response to treatment. From this evidence, the ALJ could reasonably find that a limitation to light exertion is consistent with the evidence as a whole and make reasonable adjustments to the postural and environmental restrictions based on the subsequently received medical evidence. Therefore, the ALJ's physical RFC findings are supported by substantial evidence in the record. For these reasons, Plaintiff is not entitled to relief on his challenge to the ALJ's findings concerning the other physical impairments.

### Vocational Findings

Plaintiff challenges Finding Nos. 10 and 11 are based on the above discussed claims concerning the RFC determination (DN 15 PageID # 1345). As the RFC determination is supported by substantial evidence, Plaintiff's challenges to Finding Nos. 10 and 11 must fail.

15

<u>Conclusion</u>

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion."   <u>Warner v. Comm'r of Soc. Sec.</u>, 375 F.3d 387, 390 (6th Cir. 2004).   Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ.   42 U.S.C. § 405(g).   Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law.   (<u>Id.</u>).   After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law.   Therefore, Plaintiff is not entitled to relief with regard to his challenge.

<u>ORDER</u>

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

February 18, 2022

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies:        Counsel

16